## Morton *v.* Union Traction Company, Appellant.

*Practice, C. P.—Evidence—Judgment—Action—Indemnity—Contribution.*

Whenever a plaintiff introduces and makes the record of an action, and a recovery therein against himself, the foundation of his suit or basis of his claim in an action brought by him afterwards against a third person, he is not at liberty to deny the principle upon which the action was decided. In order to ascertain what was passed upon by the jury, it is proper to examine the charge of the court filed of record in the case.

*Negligence—Indemnity—Contribution—Contract.*

Where an injury results from the neglect of a duty primarily resting upon a person from whom a recovery has been had, such person cannot claim contribution from one, who by the tort of the former has been involuntarily exposed to liability to third persons for acts of his servants, which, otherwise, he would not have been exposed to. In such a case the party against whom recovery has been had will be left by the law, where his wrongful act has placed him, unless he can show a contract which entitles him to indemnity or to contribution.

Where the indemnity is against the consequences of negligence or carelessness on the part of the indemnitor, the indemnitee must, in order to recover, show that the damage for which he seeks to be indemnified was caused by some negligent act of the indemnitor, for which, as between

the parties to the indemnity contract, the indemnitor was primarily responsible unless there be in the contract some provision rendering this unnecessary.

A building contract between a contractor and a traction company provided as follows: "The contractor further agrees that he will indemnify and save harmless the traction company from all suits or actions of every name and description brought against the said traction company for or on account of any injuries or damages received or sustained by any person or persons by or from the said contractor, his assistants or agents, in the construction of said work, or by or in consequence of any negligence in guarding the same, or any improper materials used in its construction, or by or on account of any act or omission of said contractor or his agents. And the said contractor further agrees, that so much of the money due him under and by virtue of this agreement as shall be considered necessary by the said engineer, may be retained by the traction company until all such suits or claims for damages as aforesaid shall have been settled and evidence to that effect furnished to the satisfaction of the engineer." The contract reserved to the traction company the power to increase or diminish the work, to direct the manner, mode and time in which and at which it should be done, to select materials, to give orders to the men in the absence of contractors, and to discharge incompetent men at discretion. *Held*, that it was not the intention of the parties to make the contractors indemnitors against the negligence of the traction company, or its servants, or against a negligently unsafe condition of the work for which, as between the parties to the contract, the traction company was primarily responsible.

Argued Dec. 14, 1901. Appeal, No. 261, Oct. T., 1901, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1900, No. 836, on verdict for plaintiff in case of Morton, Reed & Co. v. Union Traction Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit to recover balance alleged to be due on a building contract. Before BEITLER, J.

At the trial defendant claimed to set off a claim of $5,500 recovered against the defendant in the United States district court for the eastern district of Pennsylvania for the negligent killing of one Fetters, an employee of the bricklaying contractors for the power house, for which plaintiffs contracted for the metal work. Other facts in the case appear by the opinion of the Superior Court.

When Frank A. Hillebrand was on the stand, the following question was asked:

Frank A. Hillebrand, sworn.

Mr. Pepper: What do you propose to prove by this witness?

Mr. Leaming: I propose to prove by this witness that the dropping of the beam was due to the servants of Connery, the subcontractor of Morton, Reed & Company.

Objected to as the record of the proceedings in the United States court is the exclusive evidence of liability which the traction company satisfied by payment.

Mr. Leaming: " Q. At the time Mr. Fetters was killed, who were you working for? A. Mr. Connery. Q. He was what was known as the Connery Boiler Works, wasn't he? A. Yes, sir. Q. You were working at the steel stack situated where? A. Thirteenth and Mt. Vernon, for the Union Traction Company. Q. On the day that he was killed, before dinner time, where were you working? A. On top of the stack."

Mr. Pepper now renews his objection, and both counsel argue the questions of law in the case.

Mr. Leaming offers in evidence the record of the proceeding in the case of Fetters v. Union Traction Company, in the United States court.

Objected to by Mr. Pepper, for the reason that upon its face it shows the making by the traction company of a payment in respect of which they are not entitled to indemnity under the contract.

Objection sustained. Exception to defendant. [1]

Mr. Leaming: I offer to prove by the witness on the stand, to be followed by other witnesses, that the employees of Connery, the subcontractor of Morton, Reed & Company, were at work on a steel stack which they were constructing, and which was over 100 feet high, and that in the progress of the work it became necessary to move a working platform from a lower to a higher level; that just before the dinner hour on August 26, 1897, Connery's servants had negligently placed certain beams in an upright position inside the stack, resting upon a plank; that they then went to their dinners and returned about an hour later, climbing up a ladder upon the exterior of the stack and swinging themselves over the top of the stack, dropping themselves upon the plank which supported the upright beams; that one of the beams was thus dislodged and shot downwards, point first like an arrow, passing through a protective platform which

was built some distance above the ground, and killing one Fetters, who was a bricklayer, employed by Keen, Frazier & Company; that no officer or employee of the Union Traction Company was present, or was in any way in charge of the work. This for the purpose of showing that Fetters's death was due to the joint negligence of Connery and the Union Traction Company.

Objected to. Objection sustained. Exception to defendant. [2]

The court charged as follows:

[This matter is a matter of law rather than of fact in the shape in which it is now presented, and I purpose taking the responsibility of directing you to find a verdict for the plaintiffs for the amount of their claim with interest. Mr. Pepper will give you a calculation of what that amount will be.]

Verdict and judgment for plaintiff for $1,463.58. Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence. (3) Charge of the court, quoting it.

*Thomas Leaming*, for appellant.—In the absence of any contract whatever, the Union Traction Company could set off the judgment against it: Aiken v. Philadelphia, 9 Pa. Superior Ct. 502; Armstrong County v. Clarion County, 66 Pa. 218; Horbach v. Elder, 18 Pa. 33; Bailey v. Bussing, 28 Conn. 455.

Under the indemnity clause of the contract, the contractor is bound to indemnify the Union Traction Company: Wait's Engineering and Architectural Jurisprudence, sec. 638.

Such a case as the present is the only conceivable one to which the clause of indemnity could apply: Howard v. Union Traction Co., 195 Pa. 391; Dutton v. Landsdowne Borough, 198 Pa. 563; Wiest v. Electric Traction Co., 200 Pa. 148.

*G. W. Pepper*, with him *W. B. Bodine, Jr.*, for appellee.— It has never been held nor intimated nor supposed that a court will compel contribution where the separate and distinct negligent acts of several have concurred in causing or contributed to the accident: Howard v. Union Traction Co., 195 Pa. 391;

Dutton v. Lansdowne, 198 Pa. 563; Wiest v. Electric Traction Co., 200 Pa. 148; Leidig v. Bucher, 74 Pa. 67.

The language of the contract cannot be tortured to cover the case of separate and exclusive negligence of the traction company: Manhattan Ry. Co. v. Cornell, 54 Hun, 292; Springfield v. Boyle, 164 Mass. 591; Indianapolis, etc., R. R. Co. v. Brownenburg, 32 Ind. 199.

OPINION BY RICE, P. J., May 22, 1902:

The plaintiff sued in assumpsit to recover an unpaid balance due upon a contract under which they erected a steel smoke-stack for the defendant. They sublet the work to one William M. Connery, but as the contract between the plaintiffs and the defendant provided that "no subcontractor shall under any circumstances relieve the contractor"—meaning Morton Reed & Company—"of his liabilities or obligations under this contract," the case is in the same situation, so far at least as the duty of Morton, Reed & Company to indemnify the defendant is concerned, as if they had performed the work. The defendant pleaded set-off, payment with leave, etc. On the trial of the case the plaintiffs offered in evidence a stipulation of counsel in which it was agreed, inter alia, as follows:

"All the work required by the said contract to be performed by Morton, Reed & Company was by them performed and accepted by the defendant, but the defendant contends that Morton Reed & Company have not complied with the clauses of the contract relating to indemnifying the defendant." The clauses of the contract here referred to will be discussed after we have disposed of the question, not distinctly suggested in the above stipulation, namely, as to the defendant's right to contribution independently of the indemnity clause of the contract.

The defendant offered in evidence in support of its plea of set-off, a transcript of the record of the case, Verna R. Fetters v. Union Traction Company, in the United States Circuit Court, wherein she recovered a judgment in damages for the loss of the life of her husband, which judgment was paid by the defendant. The pleadings in that case are not printed, but from the evidence and the charge of the court, which are printed, there is no difficulty in ascertaining the ground of her recovery.

It appears that her husband was an employee of Keen and Frazier, who had a contract with the defendant for lining the stack in question with brick. After the metal work under Connery had been carried up a certain distance, the bricklayers under Keen and Frazier began their work. The metal work being carried on at the same time, Connery, at the instance of and pursuant to a special contract with the defendant, constructed a plank platform inside the stack to prevent tools and other things from dropping on the heads of the bricklayers. Under its contract with the plaintiffs, the defendant had the fullest right of inspection as the work progressed. On the day of the accident its assistant engineer requested some of Connery's men to remove one of the planks of this platform so that he might plumb the stack. This was done. Later in the day a heavy stringer or beam in the use, or under the control, of the metal workers was dislodged in some way, fell, and broke or passed through the protective platform and killed Fetters.

Whenever a plaintiff introduces and makes the record of an action, and a recovery therein against himself, the foundation of his suit or basis of his claim in an action brought by him afterwards against a third person, he is not at liberty to deny the principle upon which the action was decided : Weckerly v. Lutheran Congregation, 3 Rawle, 172. In order to ascertain what was passed upon by the jury, it is proper to examine the charge of the court filed of record in the case : Follansbee v. Walker, 74 Pa. 306. It will, therefore, be pertinent to quote from the charge to the jury in the Fetters case the instructions of the court as to the controlling questions in that case. At the outset of his charge the learned judge said, " We are not here to determine any other question than this, whether the defendant is responsible; and we have nothing to do, I repeat, with the contingent liability of Morton, Reed and Company. So you may lay that aside in advance."

Speaking of the original condition of the platform, he said : " I see no evidence here that would justify the jury in finding that this protective platform was defectively constructed, either in the manner of its construction or in the materials selected; and therefore, even if the traction company were responsible for the erection of the platform, we should be obliged to say to you, and we do say, there is no evidence that it was insuffi-

cient. . . . We take it to have been, and you must take it to have been sufficient for the purposes for which it was erected."

Speaking of the responsibility for the removal of the plank, he said : " But I cannot agree with the defendant's counsel in holding that the removal of that board was the work of the contractor. It was done, it is true, by persons who were in the employ of the contractor; but, as I understand, they were acting at that time under the direction of the engineer—or the assistant engineer, which is the same thing—in doing the work which the defendant itself was performing. The defendant itself was doing this work and it was interfering—properly enough, but still interfering—with the condition of the platform. Therefore, in my opinion, the men doing that work were doing it for the defendant."

After careful instructions as to the questions of negligence to be determined by the jury, he concluded as follows : " Now these are the questions—or perhaps it is more accurate to say, that is the question—in the case for you. It is the single question, whether under all the circumstances in this case the defendant used due and proper care to close this aperture, to restore this platform to the condition in which it found it. If it was neglectful; if, considering the danger to which the men were constantly exposed, it delayed an unreasonable time, then it may be responsible for what has happened in this case."

In determining what was adjudicated in that case, we must presume that the jury obeyed the instructions of the court. Thus viewing the record we are warranted in saying that these points were adjudicated: First, the injury did not occur in consequence of any defect in the original construction of the protective platform or of any defect in, or inadequacy of, the materials used. Second, the traction company was responsible for the removal of the plank and for the failure to restore the platform to its original condition, and was negligent in not doing so. Third, if the traction company had not been negligent in this particular, the accident would not have happened ; in other words, if a hole had not been left or the platform weakened by the removal of the plank, the beam or stringer would not have passed through and struck Fetters. But, fourth, the record in that case does not establish the fact that the injury was sustained in consequence of any joint, concurrent or independ-

ent negligence of the plaintiffs, their subcontractor or agents, in the construction of the work, or in guarding the same or in the use of improper materials, " or by or on account of any act or omission" of the plaintiffs, their sub-contractor or agents. The ground of recovery in that case was the negligence of the traction company. The question whether the plaintiffs, their subcontractor or agents, were negligent, was not in issue and could not be decided by that jury. It was expressly excluded from their consideration by Judge McPHERSON's charge. It follows that the record in that case does not, of itself, establish the recovery of damages for an injury with respect to which the traction company is entitled either to indemnity or to contribution from Morton, Reed & Company.

But in addition to the record in the Fetters case the defendant offered to prove by the testimony of witnesses to be called in the present case, that the beam or stringer was negligently placed by Connery's servant in such a position that when they stepped upon the plank upon which it was supported, it was dislodged and fell, breaking or passing through the protective platform below. The offer is fully set forth in the second assignment of error. As already intimated, the judgment in the Fetters case does not establish the fact that the injury was attributable exclusively to the negligence of the defendant. There may be recovery against either one of two joint tort feasors. It, therefore, would not contradict that record to prove that the injury would not have resulted if the negligence of Connery's men had not concurred with that of the defendant.

Assuming, then, that, in view of the defective condition of the protective platform, the former were negligent in the particular above referred to, the first question presented for our decision is, whether, independently of the indemnity clause of the contract, the defendant is entitled to contribution from the plaintiffs. The defendant must necessarily take this position: True, we were negligent, but our negligence would have been harmless, had it not been for the fact that Connery's employees negligently placed the beam or stringer in an unsafe position; therefore, although we were properly held liable in the Fetters case, the plaintiffs, who are responsible for the negligence of Connery's employees, ought to contribute proportionably with

us in paying the damages.    But it seems to us the plaintiffs may very properly answer : The negligence of the employees of Connery, our subcontractor, would have been harmless if the defendant had not weakened, or left a hole in, the protective platform, and the negligence for which the defendant has paid, was its own act.    Even assuming, which as the case is here presented we are hardly warranted in assuming, that both parties were jointly liable to Fetters's widow for the negligent act which was the basis of recovery in that suit, namely, the impairment of the protective platform, yet, as between the parties to this suit, the defendant was the superior.    The act was done for its purposes, not those of the plaintiffs.    But if the only negligence on the part of the plaintiffs, of which we may take notice, is that set forth in the offer, then, according to the doctrine of Wiest v. Electric Traction Company, 200 Pa. 148, and cases therein cited, it would seem, that each party was guilty of an independent act of negligence, without which the injury would not have been produced.    They were not acting in concert, and it is not clear that either has an equity which would be the proper basis of an implied promise to make contribution.    But if either party has a superior equity, it must be the plaintiffs, because the negligent act which was the basis of the recovery in the Fetters case deprived them, their subcontractor and his employees, as well as the bricklayers, of the protection which the platform in its original condition afforded, and increased the hazard incident to their work.    The general rule that there can be no contribution between wrongdoers is expressed in the maxim that no man can make his own misconduct the ground for an action in his own favor; and if he suffers thereby, the law will not relieve him; nor can it recognize equities as springing from a wrong in favor of one concerned in committing it. There are exceptions to the general rule, as the cases cited by the appellant's counsel show, but we are unable to conclude that this is one of them.    The rule fails where the injury grows out of a duty resting primarily upon one of the parties, and, but for his negligence there would have been no cause of action against the other.    Hence, under some circumstances, a servant may be liable to his master for the damages recovered against the latter in consequence of the negligence of the former.    It is upon this principle, also, that a property owner is held liable

over to a municipal corporation for the damages it has been compelled to pay for injuries caused by defects in a sidewalk. Manifestly, this principle upon which a constructive wrongdoer obtains indemnity from the actual wrongdoer does not apply here, because, as we have already intimated, the primary duty to restore the protective platform to its original safe condition rested not on the plaintiffs, their subcontractor or agents, but upon the defendant. Another distinction is to be noted which has been thus expressed: " But the rule is to be understood according to its true sense and meaning, which is, where the tort is a known meditated wrong, and not where the party is acting under the supposition of the entire innocence and propriety of the act, and the tort is merely one by construction or inference of law. In the latter case, although not in the former, there may be and properly is, a contribution allowed by law for such payments and expenses between constructive wrongdoers whether partners or not: " Story on Partnership, sec. 220. See also Horbach's Administrators v. Elder, 18 Pa. 33, and Cooley on Torts, 147. This distinction was recognized in Armstrong County v. Clarion County, 66 Pa. 218. A traveler passing over a bridge which was maintainable by two counties was injured by its breaking down. He recovered damages in an action for negligence against one of the counties. It was held upon writ of error that that county might recover contribution from the other. But in that case there was a common duty. Neither county could have prevented the injury by repairing the bridge without assuming more than its just share of the burden which the law imposed upon them jointly. Natural justice required, that, as neither county was guilty of intentional wrong and both were liable for the consequences of the error of judgment in which one participated as much as the other, the one that paid the whole of the damages should receive contribution from the other. READ, J., said: " The parties plaintiff and defendant are two municipal corporations jointly bound to keep this bridge in repair. These bodies can act only by their legally constituted agents, their commissioners, who examine the structure and order repair which is done. They erred in judgment and both were liable for the consequences of that error, and one having paid the whole of the damages is entitled to contribution from the other." But in the case in hand there was no concert of

action, no neglect of a common duty, by parties jointly interested acting under the supposition of the entire innocence and propriety of the act which was the ground of recovery against the party seeking contribution. Hence, the principle applicable to partners, and others similarly situated cannot be invoked in the present case. Where the injury resulted from the neglect of a duty primarily resting upon one from whom a recovery has been had, we fail to see upon what principle he can claim contribution from one, who by the tort of the former has been involuntarily exposed to liability to third persons for acts of his servants, which, otherwise, he would not have been exposed to. In such a case the party against whom recovery has been had will be left by the law, where his wrongful act has placed him, unless he can show a contract which entitles him to indemnity or to contribution.

We come then to the question whether the indemnity clause of the contract applies to such a case as we have last stated. It reads as follows : " The contractor"—meaning Morton, Reed & Company—" further agrees that he will indemnify and save harmless the Union Traction Company from all suits or actions of every name and description brought against the said Union Traction Company for or on account of any injuries or damages received or sustained by any person or persons by or from the said contractor, his assistants or agents, in the construction of said work, or by or in consequence of any negligence in guarding the same or any improper materials used in its constructions or by or on account of any act or omission of the said contractor or his agents." Then follows a clause authorizing the defendant to retain so much of the money due the plaintiffs as should be considered necessary by the defendant's engineer, " until all such suits or claims for damages as aforesaid shall have been settled and evidence to that effect furnished to the satisfaction of the engineer."

We know of no Pennsylvania case in which the precise question raised here has been discussed. But this statement of the rule of law seems to us to be founded upon sound principle : Where the indemnity is against the consequences of negligence or carelessness on the part of the indemnitor, the indemnitee must, in order to recover, show that the damage for which he seeks to be indemnified was caused by some negligent act of

the indemnitor, for which, as between the parties to the indemnity contract, the indemnitor was primarily responsible unless there be in the contract some provision rendering this unnecessary. After a careful consideration of the provisions of this contract and of the relations of the parties, we are of the opinion that this principle should control the decision of this case. It is to be observed that the plaintiffs were not in the insurance business; therefore, the rule that a contract of insurance is to be construed most strongly against the insurer has no application. They did not undertake to indemnify the defendant against all suits for damages that might be brought against it growing out of the construction of the work. What they undertook was to indemnify the defendant against the consequences of their own negligence and the negligence of their servants in the performance of their part of the contract. Good faith required that the other party to the contract should not by its negligence subject the contractor to additional risks. Although not expressed in the contract this is reasonably to be implied, otherwise the plaintiffs would be held not only for their own negligence but for the negligence of the defendant and its servants. We cannot bring our minds to the conclusion that the parties contemplated liability over for an act or omission, which, but for the negligent act of the defendant would not have been negligent. But it is argued that the only possible case in which this indemnification can operate is one of joint tort and therefore it must be presumed to have been intended to give the defendant a right of action over, although the condition out of which the injury arose, and by which it was made possible, was created by its own negligent act. In this conclusion we cannot concur. In the first place the introduction of the clause was necessary, or at least expedient, in order to give the defendant a right of set-off in a proper case. In the second place, and this we regard as the more important consideration, it is to be observed, as concisely stated by the appellee's counsel, that after prescribing with minuteness the details of the work, the defendant reserved to itself the power to increase or diminish it, to direct the manner, mode and time in which and at which it should be done, to select materials, to give orders to the men, in the absence of the contractor, and to discharge incompetent men at discretion. In view of these provisions it

is not improbable that the parties contemplated the contingency, though remote, of the contractor being held to be the agent of the traction company in the construction of the work and intended to provide for the indemnification of the latter where it should be sued by, or held liable to, third persons upon that ground. As is said of similar stipulations in building contracts in a work to which counsel on both sides have referred us, " The question as to whether a builder is really an independent contractor or a servant is in some cases one of doubt. This is one good reason why the stipulations are used, for they are a safeguard, should the builder be declared the servant of the owner or city : " Wait's Engineering and Architectural Jurisprudence, sec. 638. We are inclined to think that the parties had this contingency in mind. So that the argument that the indemnity clause was intended to apply to a case of joint or concurrent negligence, based on the assumption that this is the only possible case to which it can apply, is not conclusive. Upon the whole case we conclude, that it was not the intention of the parties to make the plaintiffs indemnitors against the negligence of the defendant or its servants or against a negligently unsafe condition of the work, for which, as between the parties to the contract, the defendant was primarily responsible. Therefore, the court committed no error in rejecting the offers or in giving binding instructions for the plaintiffs.

Judgment affirmed.