Pennsylvania Turnpike Commission, to use, *v.* U. S. Fidelity & Guaranty Co., Appellant.

Argued November 26, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Walter Biddle Saul*, of *Saul, Ewing, Remick & Harrison*, with him *John Y. Scott* and *F. A. Van Denbergh, Jr.*, for appellant.

*John H. Moody*, with him *Bailey & Rupp*, for appellee.

OPINION BY MR. JUSTICE DREW, January 5, 1942:

This action in assumpsit was brought by Pennsylvania Turnpike Commission, to the use of John A. Albright, appellee, against United States Fidelity & Guaranty Company, appellant, surety on a labor and materialmen's bond given by Union Paving Company to the Turnpike Commission. To the Guaranty Company's affidavit of defense and amended affidavit of defense, Albright filed a reply raising questions of law, which was sustained by the learned court below. Judgment was, therefore, ordered to be entered in favor of Albright, and this appeal followed the entry of that judgment.

From the pleadings, the following pertinent facts are ascertained: The Paving Company entered into a contract with the Turnpike Commission for the construction, inter alia, of sections 8P2 and 8P3 of the Pennsylvania Turnpike. The Paving Company and Albright thereafter entered into two contracts, which may be termed the 8P2 and 8P3 contracts, respectively, whereby

the latter agreed to do certain hauling of materials incident to the former's construction of those sections. Albright bases his claim on the failure of the Paving Company to pay him for work done in fulfillment of the 8P2 contract, and instituted the present action against the Guaranty Company on its suretyship obligation under the labor and materialmen's bond given the Turnpike Commission to recover the sum of $6,897.45.

The Guaranty Company admitted this sum was due under the contract and that it had not been paid, but averred, by way of set-off and counterclaim, that Albright was indebted to the Paving Company in the sum of $7,606.90, because he had failed to perform his obligation under paragraph seven[1] of the 8P3 contract. The foundation of the Guaranty Company's claim is that one of Albright's trucks struck and fatally injured an employee of the Paving Company, and that the widow has demanded compensation under the Workmen's Compensation Act against the Paving Company, which placed a valuation of $7,606.90 on the claim. The Paving Company having assigned its rights under paragraph seven of the 8P3 contract to the Guaranty Company, the latter contends this compensation claim is a valid set-off and counterclaim to the suit of Albright.

The primary question to be answered is—Did the parties contemplate, by the incorporation of paragraph seven in the contract, that Albright was to indemnify the Paving Company for any payments it might make to its own employees under the Workmen's Compensation Act, in connection with Albright's performance of the

---

[1] "It is understood and agreed that in the performance of this contract the said party of the first part [Albright] is an independent contractor and has full charge of the transportation of the material and the management of the trucks, and he agrees that he will be responsible for all damages of every kind caused to the property or persons of others, or to the employees or property of the said party of the second part [the Paving Company] and will indemnify and save harmless the said party of the second part against all suits for claims or damage of any kind, nature and description in connection with the performance of this contract."

contract? We are firmly convinced that it never was the intention of the parties to impose such an obligation upon Albright. From a most careful scrutiny of the contract as a whole, we are unavoidably led to the conclusion that the sole intention was to impress upon Albright, as subcontractor, the status of an independent contractor, and to make certain that he would relieve the Paving Company from common law liability for suits for damages arising out of the former's negligence or that of his employees. Any doubt that this was the contemplation of the parties is quickly resolved by a minute examination of the phraseology of the paragraph in question.

Everything in the paragraph, following the words— "It is understood and agreed that in the performance of this contract the said party of the first part is an independent contractor"—could be eliminated without in the slightest degree detracting from the obligations imposed on Albright under the agreement. The expression "has full charge of the transportation of the material and the management of the trucks" is but another way in which the parties endeavored to insure their intent to establish the relationship of independent contractor, for, as was said by this Court, in *Long v. Eastern Paving Co.,* 295 Pa. 163, 166, in endeavoring to ascertain whether the relationship there in question was master and servant or employer and independent contractor: "If the hirer is merely interested in the completion of the work, and does not reserve control of the manner of doing it, we find an independent contract."

The next portion of the paragraph—"he agrees that he will be responsible for all damages of every kind caused to the property or persons of others, or to the employees or property of the said party of the second part"—merely enumerates obligations which the law itself casts upon one who is an independent contractor and negligently causes such damages. Obviously, the use of the words "responsible for all damages of every kind" in this portion of the paragraph was not intended

to include workmen's compensation payments, for a proceeding under the Workmen's Compensation Act is not one by which "damages" are recovered, but rather one for "compensation": 71 C. J. 232.

The last portion of the paragraph in question—"will indemnify and save harmless the said party of the second part against all suits for claims or damage of any kind, nature and description in connection with the performance of this contract"—at first blush might appear to include payments of compensation. However, when this general expression is read in the light of the previous provisions, it readily becomes apparent that no such intent was contemplated. It is a well-settled canon of construction that where general expressions are used following the enumeration of particular objects, the general terms are referable to the particular objects: *Rl. Es.-L. T. & T. Co. v. Bk. Tr. Co. Phila.*, 104 Pa. Superior Ct. 493, 495. Furthermore, while certain words, if taken literally, might tend to indicate the intention for which appellant here contends, such words must be interpreted to be consistent with the general intention, which clearly was to impose common law liability upon Albright for his negligent acts or those of his servants. In this connection, it was stated, in Page on the Law of Contracts, Vol. 4, par. 2039: "The contract being construed as a whole, it follows that one part of it may affect the construction of a different part. An illustration of this is found where the contract as a whole shows a given intention, but certain words or phrases if taken literally will defeat such intention. In such case the particular words or phrases will, if possible, be construed in such a way as to be consistent wtih the general intention." Moreover, it is only reasonable to suppose that the Paving Company and Albright realized that in a suit by a third person the question as to whether the latter was really an employee or an independent contractor might be of some doubt: *Morton v. Traction Co.*, 20 Pa. Superior Ct. 325, 337. Therefore, for that reason they inserted this general expression, not for the purpose of including

workmen's compensation payments, but to safeguard the Paving Company against the negligence of Albright in a suit by a third party should Albright be declared to be the employee of the Paving Company, rather than an independent contractor.

Thus, since the parties did not intend to include such compensation payments in their contract, the claim of the Guaranty Company is not valid as a set-off and counterclaim in the present suit. This is true also for the reason that appellant has failed to aver in its affidavit of defense that the widow of the deceased employee has not instituted an action in trespass against appellee. The affidavit of defense cannot be amended so as to include such an allegation, for, as we understand from appellant's own brief, the widow, while the present case was pending in the court below, brought suit against appellee and Union Paving Company was joined therein as a third party defendant. Despite the Workmen's Compensation Act of June 2, 1915, P. L. 736, art. III, par. 319, as reënacted or amended by the Acts of June 4, 1937, P. L. 1552, par. 1, and June 21, 1939, P. L. 520, par. 1,[2] the right to institute suit for wrongful death still remains in the dependents of the employee. See *Scalise v. F. M. Venzie & Co., Inc.,* 301 Pa. 315, 320. Under the present circumstances, the dependents and the employer, or its assignee, cannot enter separate suits against the third party wrongdoer, for the policy of the law is opposed to the splitting up of the cause of action: *Philadelphia v. Phila. R. T. Co.,* 337 Pa. 1, 4.

Judgment affirmed.

---

[2] "Where a third person is liable to the employe or the dependents for the injury or death, the employer shall be subrogated to the right of the employe or the dependents against such third person, less reasonable attorney's fees and other proper disbursements, but only to the extent of the compensation payable under this article by the employer. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe or to the dependents, and shall be treated as an advance payment by the employer on account of any future instalments of compensation."