## Dravo-Doyle Company, Appellant, v. Royal Indemnity Company.

Argued October 6, 1952. Before DREW, C. J., STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*W. S. Moorhead, Jr.,* with him *J. Wray Connolly, David W. Craig* and *Moorhead & Knox,* for appellant.

*James J. Burns, Jr.,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 25, 1952:

The lower court sustained preliminary objections to the plaintiff's complaint in assumpsit and gave the plaintiff fifteen days in which to amend in order to allege that it had the right to a lien. Upon failure to amend, judgment was entered for the defendant. This appeal is from the entry of that judgment.

The question here involved is one of law and there is no dispute regarding the facts. Plaintiff, Dravo-Doyle Company, is an unpaid materialman. Defendant is a surety for a subcontractor which is now bankrupt.

Bechtel International Corporation, the general contractor, entered into a subcontract with Industrial Contracting Company. Defendant's bond generally insures the performance of such contract. Plaintiff furnished material and equipment to the subcontractor for which it has not been paid. The determination of the question involved turns on an interpretation of the contract between Bechtel and Industrial.

The pertinent portions of such contract are as follows: "2. ITEMS TO BE FURNISHED BY SUBCONTRACTOR: Subcontractor shall supply and furnish at the location where the work is to be performed all items, including labor, materials, and equipment, necessary for the complete and satisfactory performance of this subcontract, except such items as the Contractor in the Subcontract of which these terms and conditions are a part specifically agrees to supply or furnish to or for the use of Subcontractor. . . 12. LIENS AND CLAIMS: Subcontractor shall indemnify and save harmless Contractor and Owner from all claims, demands, causes of action or suits of whatsoever nature arising out of the services, labor and material furnished by Subcontractor, or its subcontractors, under this Subcontract. Subcontractor shall immediately pay and discharge, or shall provide security sufficient and satisfactory in itself to its laborers, materialmen or other creditors, or those of its subcontractors, for the payment of any obligation, or alleged obligation, it, or any of its subcontractors may have, in aid of the enforcement of which a lien or right of any kind is established, or is attempted to be established, upon or against the work or the real property upon which the

work is situated. Contractor may, as a condition precedent to any payment hereunder, require Subcontractor to submit complete waivers and releases of any and all claims of any person, firm or corporation. Such release must be submitted covering all such claims as a condition precedent to final payment. . . 17. INSURANCE AND BONDS: Subcontractor, at its own expense, shall procure, carry and maintain on all its operations hereunder the bonds and policies of insurance in the amounts specified in the Subcontract. The bonds and policies of insurance shall be in such form and shall be issued by such company or companies as may be satisfactory to Contractor. Subcontractor shall cause to be furnished to Contractor certificates of insurance from the assuring companies which shall include the following clause: 'Ten (10) days' advance notice shall be given in writing to Bechtel International Corporation, 141 Battery Street, San Francisco, California, on cancellation, termination, or any alteration of the policy or policies evidenced by this certificate.' . . . 18. (d) Payments otherwise due may be withheld by Contractor on account of defective work not remedied, claims filed, or reasonable evidence indicating probability of filing of claims, failure of Subcontractor to make payments properly to subcontractors or for material or labor, or a reasonable doubt that the subcontract can be completed for the balance then unpaid. If the foregoing causes are removed, the withheld payments shall promptly be made. If the said causes are not removed on written notice, Contractor may rectify the same at Subcontractor's expense. Should any valid indebtedness arise after final payment is made, the Subcontractor shall reimburse the Contractor for any amount that it may pay in discharging any lien therefor or [sic] any claim affecting title to the work on Owner's property."

The bond in its pertinent portion provided: "WHEREAS, the above bounden Principal has entered into a certain written contract with the above named Obligee, dated the 14 day of May, 1949. To: Sandblast and Paint Piling and Structural Steel in transit which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein. Now, therefore, the condition of the above obligation is such, That if the above bounden Principal shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above named Obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise, to be and remain in full force and effect."

With this factual background, we turn to a consideration of the law. The bond, of course, only insured that the Industrial Contracting Company would carry out the terms of the contract. Therefore the decision involves an interpretation of the contract.

Appellant contends that the bond was both a "performance" and a "payment" bond and that therefore as a third-party beneficiary of the contract, it should be entitled to recover. The law is clear that since the decision in *Commonwealth v. Great American Indemnity Co.*, 312 Pa. 183, 167 A. 793, an unpaid materialman *may be under certain circumstances* a third-party beneficiary of the contract. Equally apparent from the decisions is the proposition that one bond may insure both payment and performance and again *in certain circumstances* an unpaid materialman may be a third-party beneficiary: *Pennsylvania Supply Company v.*

*National Casualty Company,* 152 Pa. Superior Ct. 217, 31 A. 2d 453; Cf. *Fleck-Atlantic Company v. Indemnity Insurance Company of North America,* 326 Pa. 15, 191 A. 51. But none of these general propositions definitely determine the issue here involved, for in the instant case we have a contract unlike those present in the cases above cited.

The question here involved is one of interpreting the contract with a view to determining (a) whether the parties intended to benefit any third parties, and (b) if so, what parties they intended to benefit.

It seems clear to us, as it did to the court below, that the above quoted portions of the contract show an intention to benefit some third parties. However, in summary, the lower court decided that ". . . the general contractor in the bond and contract was only seeking to protect itself from claims, which might result in a lien upon or against the work or the real property upon which the work was situated. Under these circumstances, there can be no implication drawn that any materialman, who did not have in aid of his claim a right to a lien, received any protection under the bond or became a donee beneficiary. . . .". With this conclusion we agree.

There is in this case no specific promise on the part of the subcontractor to pay the materialmen. However, plaintiff argues that by implication paragraph 2 read in conjunction with paragraph 17 and 18(d) makes as one of the terms of the contract the promise to pay all the materialmen. In the absence of paragraph 12, this might be true. But paragraph 12 restricts the obligations of the subcontractor to the payment of any obligation ". . . in aid of the enforcement of which a lien or right of any kind is established, . . .". Thus in plain and unambiguous words the parties to the contract have shown their intention to limit the third-

party beneficiaries to a specific class of persons, viz., those who have liens.

Appellant in his first contention relies upon *Pennsylvania Supply Company v. National Casualty Company,* supra. But that case, as stated above, is distinguishable. No provision such as that found in paragraph 12 was in the contract in that case.

For his second contention appellant argues that this bond was both a performance and a payment bond and therefore insured payment to all materialmen. We agree that one bond may cover both payment and performance: *Pennsylvania Supply Company v. National Casualty Company,* supra, where it is said (p. 221) ". . . It is no objection that both conditions were incorporated in a single instrument. . . .". But the question here is not the type of bond but what parties it was the intention of the contracting parties to benefit. Thus this proposition only aids the appellant in establishing that the contract was some type of third-party beneficiary contract—a proposition with which we agree—and does not help in determining the crucial question: Who were the beneficiaries?

Analogous and related arguments form the basis for the third and fourth portion of the appellant's brief. These we believe are adequately answered by the court below where it said: "The problem with which we are now concerned is not only considered in the Restatement of the Law of Contracts to which we have referred above, but also in the Restatement of the Law of Security. Section 165 of the latter Restatement under the title 'Guaranty of Contractor's Promise to Pay for Labor and Materials' reads as follows: 'Where a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and

materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, unless the surety's contract in terms disclaims liability to such persons.' ". The above section 165 is, we think, in accordance with the various sections of the Law of Contracts to which we have above referred. However, the following section in the Security Restatement deals specifically with the point at issue in this case and supports, we think, the conclusion which we have reached: "§166. Guaranty of Contractor's Promise to Complete Construction Free of Liens. Where a surety guarantees the performance of a contract by a contractor *who does not promise the owner to pay those furnishing labor or materials but agrees to complete the work free of liens or to furnish labor and materials, laborers and materialmen have no rights against the surety.*" (Emphasis supplied). By the way of illustration, the Security Restatement following §166 has given the following: "1. The A Construction Company contracts to build a fire station for the city of Y and to furnish at its own expense the necessary labor and materials. S guarantees that the company will perform its contract satisfactorily. The building is constructed according to contract, but the company does not pay certain materialmen. The materialmen have no right against S. 2. The A Construction Company contracts with O to build a house and to deliver the building free of liens. S guarantees the company's contract. The house is built according to contract, and O pays the company so that in the jurisdiction no lien can be established against the house. The company fails to pay certain materialmen. The materialmen have no right against S."

The only other point which appellant makes is that the intention of Bechtel should be determined by the law of California. Apart from the fact that this argu-

ment was not raised below, it has no merit when the words of the contract are not in doubt. Paragraph 12 provides the solution to this case, both on this question and all others. The language is definite. The intent is clear. We agree with the lower court that the purpose of the contract and accompanying bond was only to protect the contractor against those claims for which liens could be filed.

Judgment affirmed.